Whitney D. Ackerman Esq. (SBN 284340)
Joshua C. Greer, Esq. (SBN 314431)
Duncan McGee Nefcy, Esq. (SBN 315142)
**THE LAW OFFICE OF WHITNEY D. ACKERMAN, LLP**
17326 Tiara St., Encino CA 91316
T: (818) 426-9591
F: (866) 610-6540
whit@wdallp.com
shuki@wdallp.com
duncan@wdallp.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LYNN ARTHUR, an individual; | ) Case No: 2:23-cv-738 |
| Plaintiff, | ) **COMPLAINT FOR MONETARY** |
| | ) **DAMAGES, DECLARATORY RELIEF, AND** |
| vs. | ) **INJUCTIVE RELIEF; DEMAND FOR JURY** |
| | ) **TRIAL** |
| MAHMUD ULKARIM, an individual; | ) |
| LAUREN ZUNIGA, an individual; | ) |
| RONALD PERLSTEIN, an individual; | ) |
| MEGNA REAL ESTATE SERVICES, an | ) |
| unknown entity; DANCO INC., a California | ) |
| Corporation, 5700 HOOVER LLC, a | ) |
| Nevada Corporation, DOES 1-20, inclusive, | ) |
| | ) |
| | ) |
| Defendants. | ) |

---

**COMPLAINT**

COMES NOW, PLAINTIFF LYNN ARTHUR ("Plaintiff") who alleges:

**THE PARTIES**

1.      Plaintiff LYNN ARTHUR ("Ms. Arthur" or "Plaintiff") is a senior citizen, i.e. over the age of 65 and an elder as defined by California's Elder Abuse Act, with disabilities who at all times relevant to this action was a resident and tenant of 5710 South Hoover Street, "Room #7", Los Angeles, CA 90037 (the "Property" or "Premises").

2.      Plaintiff qualifies as a "person who hires a dwelling" (*i.e.*, tenant) as defined by California Civil Code section 1940.  By way of Plaintiff's monthly payment of rent, Plaintiff was also a common law tenant of the Property.

3.      On information and belief, Defendant MAHMUD ULKARIM ("Defendant" or "Mr. Ulkarim") was, and at all times concerned in this Complaint, and at present, is a Property Manager or Broker in connection with the Property.

4.      On information and belief, Defendant RONALD PERLSTEIN ("Defendant" or "Perlstein") was, and at all times concerned in this Complaint, and at present, is a Property Manager, Agent, or Broker in connection with the Property.

5.      On information and belief, Defendant LAUREN ZUNIGA ("Defendant" or "Ms. Zuniga") was, and at all times concerned in this Complaint, and at present, is a Property Manager of the Property.

6.      On information and belief, Defendant MEGNA REAL ESTATE SERVICES ("Defendant" or "Megna Real Estate Services") was, and at all times concerned in this Complaint, and at present, is the Property Management Service for the Property.

7.      On information and belief, Defendant DANCO INC. ("Defendant" or "Danco Inc.") was, and at all times concerned in this Complaint, and at present, is the Property Management Service for the Property.

8.      On further information and belief, Defendants were, and at all times concerned in this complaint, and at present are, owners and/or property managers tasked with overseeing the

maintenance and all day-to-day property management issues of the Property. On further information and belief, Defendants reside and/or and conduct business in Los Angeles County.

9.     Plaintiff is informed and believes, and based thereon alleges, pursuant to Section 474 of the California Code of Civil Procedure, that the fictitiously named Defendants sued herein as Does 1 through 20, inclusive, and each of them, are in some manner responsible or legally liable for the actions, events, transactions and circumstances alleged herein.  The true names and capacities of such fictitiously named Defendants, whether individual, corporate, associate or otherwise, are presently unknown to Plaintiff, and Plaintiff will seek leave of Court to amend this Complaint to assert the true names and capacities of such fictitiously named Defendants when the same have been ascertained.  For convenience, each reference to a named Defendant herein shall also refer to Does 1 through 20, inclusive.  All defendants, including Does 1 through 20, inclusive, are sometimes collectively referred to as "Defendants."

10.     Plaintiff is informed and believes, and based thereon allege, that "Defendants," and each of them, were and are the agents, employees, partners, joint-venturers, co-conspirators, owners, principals, and employers of the remaining "Defendants," and each of them are, and at all times herein mentioned were, acting within the course and scope of that agency, partnership, employment, conspiracy, ownership or joint-venture.

a.   More specifically, Plaintiff is informed and believes and thereon alleges that some of the corporations, limited liability companies, and entities named as Defendants herein, including but not limited to DANCO INC., a California corporation, 5700 Hoover LLC, a Nevada State corporation, and DOES 1 through 20, (hereinafter occasionally collectively referred to as the "ALTER EGO CORPORATIONS"), and each of them, were at all times relevant the alter ego corporations of various individual Defendants. More specifically, Plaintiff is informed and believes and thereon alleges that DANCO INC. is and was an alter ego corporation of RONALD PERLSTEIN and that 5700 Hoover LLC is and was an alter ego

corporation of both DANCO INC. and RONALD PERLSTEIN by reason of the following:

    i. Plaintiffs are informed and believe and thereon allege that said individual defendants, at all times herein mentioned, dominated, influenced and controlled each of the ALTER EGO CORPORATIONS and the officers thereof as well as the business, property, and affairs of each of said corporations.

    ii. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, there existed and now exists a unity of interest and ownership between said individual defendants and each of the ALTER EGO CORPORATIONS; the individuality and separateness of said individual defendants and each of the ALTER EGO CORPORATIONS have ceased.

    iii. Plaintiffs are informed and believe and thereon allege that, at all times since the incorporation of each, each ALTER EGO CORPORATION has been and now is a mere shell and naked framework which said individual defendants used as a conduit for the conduct of their personal business, property and affairs.

    iv. Plaintiffs are informed and believe and thereon allege that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was created and continued pursuant to a fraudulent plan, scheme and device conceived and operated by said individual Defendants, whereby the income, revenue and profits of each of the ALTER EGO CORPORATIONS were diverted by said individual Defendants to themselves.

1               v.   Plaintiffs are informed and believe and thereon alleges that, at all times herein mentioned, each of the ALTER EGO CORPORATIONS was organized by said individual defendants as a device to avoid individual liability and for the purpose of substituting financially irresponsible corporations in the place and stead of said individual defendants, and each of them, and accordingly, each ALTER EGO CORPORATION was formed with capitalization totally inadequate for the business in which said corporation was engaged.

             vi.   Plaintiffs are informed and believe and thereon allege that each ALTER EGO CORPORATION is insolvent.

            vii.   By virtue of the foregoing, adherence to the fiction of the separate corporate existence of each of the ALTER EGO CORPORATIONS would, under the circumstances, sanction a fraud and promote injustice in that Plaintiffs would be unable to realize upon any judgment in their favor.

            viii.   Plaintiffs are informed and believe and thereon alleges that, at all times relevant hereto, the individual defendants and the ALTER EGO CORPORATIONS acted for each other in connection with the conduct hereinafter alleged and that each of them performed the acts complained of herein or breached the duties herein complained of as agents of each other and each is therefore fully liable for the acts of the other

///

11.    Plaintiff is further informed and believe, and based thereon alleges, that the acts and conduct herein alleged of each such Defendants were known to, authorized by and/or ratified by the other Defendants, and each of them.

**JURISDICTION AND VENUE**

12.    This Court has subject matter jurisdiction over the action pursuant to U.S.C. § 1331 and § 1343(a)(3) and (a)(4) for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, et seq (the Seventh Cause of Action herein).

13.    Pursuant to supplemental jurisdiction, related and inseparable causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, are brought under California's Unruh Civil Rights Act, which act expressly incorporates the Americans with Disabilities Act, as well as other tortious claims.

14.    Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) and is founded on the fact that the real property which is the subject of this action is located in this district and that Plaintiff's cause of action arose in this district.

**FACTUAL ALLEGATIONS**

15.    In October 2019, Plaintiff entered into a Lease Agreement with Megna Real Estate Services on behalf of and/or at the direction of Defendants Ron Perlstein and Danco Inc., to lease the Property.  Pursuant to the Lease Agreement, Ms. Arthur provided to Defendants Megna Real Estate Services a security deposit (the "Security Deposit") and agreed to pay approximately $650.00 per month.

16.    Ms. Arthur, a disabled senior citizen, paid premium rents during the time of her tenancy at the Property; however, there were numerous untenantable and substandard conditions affecting the habitability of the Property that were not disclosed to Ms. Arthur prior to her signing the Lease. Once she signed the Lease and moved into the Property, these conditions became apparent and materially affected Ms. Arthur's health and safety and reduced the rental value of the Property to zero.

17.    These illegal and unacceptable conditions, as further outlined below, were brought to Defendants' attention on countless occasions by Ms. Arthur on a bi-weekly basis, as well as with numerous emails. Unfortunately, despite the significantly detrimental impact these abhorrent conditions had on Ms. Arthur's health, they were never adequately addressed or properly remedied.

18.    Defendants' failure to adequately address or remedy these conditions and the impact

they had on her physical health, also caused Ms. Arthur to suffer severe emotional distress over a prolonged amount of time.

19.     Defendants have previously been warned to cease conduct similar to the allegations in the instant action (*See* e.g.: Emily Alpert and Tim Logan *SOUTH L.A. TENANTS FORCED TO VACATE BUILDING ON SHORT NOTICE* April 3, 2014, https://www.latimes.com/local/la-xpm-2014-apr-03-la-me-tenants-nightmare-20140404-story.html (detailing similar building violations, mistreatment of residents, and misuse of the Property and fraud).

A.     **Unsafe Premises and Frequent Disturbance of the Peace**

20.     Throughout Ms. Arthur's tenancy, the Premises has been and continue to be extremely unsafe and lacks adequate oversight or security to ensure the safety of the tenants. Multiple crimes have been committed on the Premises, including assaults and robberies, yet Defendants do not take action to improve the living conditions for the tenants or secure the premises. Ms. Arthur has been assaulted seven (7) times at the Property since 2019 and has been robbed several times.

21.     Ms. Arthur has had to personally report numerous incidents to management, security, and the police (she called the police at least nine times during her residency at the Property due to fear for her life), including loud noises at night, loud music, yelling, fighting, the constant smell of cigarettes and marijuana, assaults and robberies, domestic violence incidents, illicit drug use and sales, and more. Ms. Arthur witnessed Defendants' representatives smoking marijuana on the Premises while they were on the clock.  Moreover, one of the residents would bring back stolen contraband to the premises many times of the course of many months and Defendant Lauren Zuniga acknowledged that this resident was engaged in criminal behavior but that her superiors did not want to evict him.

22.     To make matters worse, there are insufficient door and window locks throughout the Property, with multiple broken doors and windows. On one occasion, Defendants removed the main entrance deadbolts for maintenance men to come in, but failed to replace them for weeks. This made an already dangerous living situation much worse and creates significant fear and anxiety for the tenants. Ms. Arthur has sought professional therapy due to the unrelenting stress

created by the inhabitable conditions, disturbance of peace and extreme fear for her safety.

**B.    Unsanitary and Hazardous Living Conditions**

23.    Throughout the entirety of Ms. Arthur's tenancy, Defendants failed to keep the Premises clean, sanitary and free from all accumulations of debris, filth, rubbish, and garbage.

24.    Trash is strewn all across the Property, in the parking lots, in walkways, in the grass, and garbage receptacles and dumpsters are not routinely emptied and are overflowing. There are multiple large piles of garbage on the ground in the dumpster area, and there are constant plumbing issues and sewage overflows that are left for weeks without being addressed or cleaned up.

25.    In addition to the above, there are a multitude of issues inside Ms. Arthur's residence that have permanently impeded her right to a habitable Property she could quietly enjoy and perform her activities of daily living without interruption or interference.  For example there were so many rats on the Property that they could be heard, seen and their feces were in Plaintiff's living space.  The residents were given rat poison and glue traps to deal with it.

26.    There are severe vermin and cockroach infestations throughout the Property that pose a health risk for all residents.

**C.    Inadequate Heat Throughout the Property**

27.    There is a lack of functioning central heating throughout the Property and Defendants do not provide individual space heaters for each room, despite temperatures often dipping into the low 40's in the fall and wintertime.

28.    Many of Defendants' tenants are senior citizens, as well as families with young children, including newborns. Some tenants have confided in Ms. Arthur that they are too afraid to complain about the issues in the building, as they fear being evicted. One such tenant, an elderly, wheelchair-bound man, informed Ms. Arthur that he was always cold but was hesitant to speak up. Ms. Arthur approached Ms. Zuniga, who had graciously provided Ms. Arthur with one space heater in 2019, thinking she may show some compassion for this disabled tenant and provide him

with a space heater. Ms. Zuniga responded angrily, informing Ms. Arthur that she paid for the heaters out of her own pocket and could not afford to buy one for each tenant. Ms. Arthur offered to purchase the heater for the disabled tenant but Ms. Zuniga stopped responding to her messages.

29.     Defendants are well aware that the Property has inadequate heating, but they have willfully shown no regard to their tenants' vulnerability to the cold and do not facilitate an environment in which tenants can reasonably address their concerns.

30.     Defendants' tenants represent some of the most vulnerable populations in Los Angeles. The conditions in which Defendants force these people to live are quite simply inhumane.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

### (By Plaintiff against Defendants and Each of them)

31.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 30 as though set forth fully herein.

32.     Per CACI 303:

1. Plaintiff and Defendants entered into a contract; a Lease Agreement.

2. Plaintiff did all that the contract required of her, making all of the rent payments.

3. Defendants were required by law to provide possession of the Premises to Plaintiff and that the quiet enjoyment and possession of the Premises would not be interrupted by failing to provide a habitable premise, or one that would cause Plaintiff to quit involuntarily or by no fault of her own.

4. Defendants failed to provide a legally permitted or habitable premises as required law.

5. Plaintiff was harmed, in that; Plaintiff paid Security and Rent to Defendant who had no legal right to accept rent due to the ongoing conditions at the Property inside and in the common areas.  (Landlords are not permitted to collect rent for a property which they have failed to maintain on a substantial level [CA Civil Code Sec. 1942.4]).

6. Defendants' breach of contract was the substantial factor in causing Plaintiff's harm.

33.     By and through the acts and omissions, Defendants did on one or more occasions breach their obligations under the Lease Agreement, the laws and codes of the State of California as mentioned above, implied warranties of habitability and quiet enjoyment, and well-settled case law.

34.     From the first day of the Lease to the present, the Property was and remains unfit for human occupation in that it substantially failed to comply with applicable civil code, building code, and housing code standards that materially affected Plaintiff's welfare, health and safety as well as Plaintiff's ability to quietly enjoy the Premises, as promised contractually by Defendants and implied by law.

35.     Plaintiff fulfilled all of her obligations under the Lease agreement.

36.     Once Plaintiff occupied the unit, Defendants were notified of the conditions by the Plaintiff throughout her tenancy.

37.     Defendants were given ample opportunity to cure the conditions but failed to do so properly, timely, reasonably or at all.

38.     Defendants, rather than cure, instead often exacerbated the uninhabitable condition by failing to take proper remedial action or hire proper remediation technicians, or to safeguard Plaintiff from damages.

39.     As a direct and proximate result of Defendants' breaches, Plaintiff suffered extensive financial damages, as well as damage to their health and well-being, in an amount to be proven at trial, but when taken individually or with the other causes of action herein, are in excess of $25,000.

## SECOND CAUSE OF ACTION: BREACH OF IMPLIED WARRANTY OF HABITABILITY/TENANTABILITY

(By Plaintiff against Defendants and Each of them)

40.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 39 as though set forth fully herein.

41.     By and through their acts and omissions, Defendants did on one or more occasions breach their obligations under Plaintiff's Lease Agreement, the laws and codes of the State of

California, the implied warranties of habitability and quiet enjoyment, and well settled case law of the State of California.

42.     The parties' contract requires that Defendants have provided the Premises in a legal and habitable condition as established by the codes of the State of California and common law. Defendants owed a duty to Plaintiff to provide her with a habitable premise pursuant to the well-settled case law in <u>Green v. Superior Court</u>, ( 1974) 10 Cal.3d 616, 637-638 [111 Cal.Rptr. 704, 718-719]; <u>Hinson v. Delis</u>, (1972) 26 Cal.App.3d 62, 70 [102 Cal.Rptr. 661, 666] and codified under Cal.Civ.Code. § 1941.1 et seq. and Health Safety Code § 17920.3. The codes which apply here, state:

**Cal.Civ.Code. § 1941.1:**

(a)     A dwelling shall be deemed untenantable for purposes of CCC § 1941.1 et seq if it substantially lacks any of the following affirmative standard characteristics or is a residential unit described in Section 17920.3 or 17920.10 of the Health and Safety Code:

(1)   Effective waterproofing and weather protection of roof and exterior walls, including unbroken windows and doors. Plumbing or gas facilities that conformed to applicable law in effect at the time of installation, maintained in good working order.

(2) Plumbing or gas facilities that conformed to applicable law in effect at the time of installation, maintained in good working order.

(4) Heating facilities that conformed with applicable law at the time of installation, maintained in good working order.

(5) Electrical lighting, with wiring and electrical equipment that conformed with applicable law at the time of installation, maintained in good working order.

(6) Building, grounds, and appurtenances at the time of the commencement of the lease or rental agreement, and all areas under control of the landlord, kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin.

(7) An adequate number of appropriate receptacles for garbage and rubbish, in clean condition and good repair at the time of the commencement of the lease or rental

agreement, with the landlord providing appropriate serviceable receptacles thereafter and being responsible for the clean condition and good repair of the receptacles under his or her control.

(8) Floors, stairways, and railings maintained in good repair.

**Health and Safety Code § 17920.3:**

Any building or portion thereof including any dwelling unit, guestroom or suite of rooms, or the premises on which the same is located, in which there exists any of the following listed conditions to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants thereof shall be deemed and hereby is declared to be a substandard building:

(a) Inadequate sanitation shall include, but not be limited to, the following:

(1) Lack of, or improper water closet, lavatory, or bathtub or shower in a dwelling unit.

(3) Lack of, or improper kitchen sink.

(5) Lack of hot and cold running water to plumbing fixtures in a dwelling unit.

(6) Lack of adequate heating.

(7) Lack of, or improper operation of required ventilating equipment.

(8) Lack of minimum amounts of natural light and ventilation required by this code.

(11) Dampness of habitable rooms.

(14) General dilapidation or improper maintenance.

(b) Structural hazards shall include, but not be limited to, the following:

(1) Deteriorated or inadequate foundations.

(2) Defective or deteriorated flooring or floor supports.

(3) Flooring or floor supports of insufficient size to carry imposed loads with safety.

(4) Members of walls, partitions, or other vertical supports that split, lean, list, or buckle due to defective material or deterioration.

(5) Members of walls, partitions, or other vertical supports that are of insufficient size to carry imposed loads with safety.

(6) Members of ceilings, roofs, ceiling and roof supports, or other horizontal

members which sag, split, or buckle due to defective material or deterioration.

(7) Members of ceilings, roofs, ceiling and roof supports, or other horizontal members that are of insufficient size to carry imposed loads with safety

(c) Any nuisance.

(d) All wiring, except that which conformed with all applicable laws in effect at the time of installation if it is currently in good and safe condition and working properly.

(e) All plumbing, except plumbing that conformed with all applicable laws in effect at the time of installation and has been maintained in good condition, or that may not have conformed with all applicable laws in effect at the time of installation but is currently in good and safe condition and working properly, and that is free of cross connections and siphonage between fixtures.

(f) All mechanical equipment, including vents, except equipment that conformed with all applicable laws in effect at the time of installation and that has been maintained in good and safe condition, or that may not have conformed with all applicable laws in effect at the time of installation but is currently in good and safe condition and working properly.

(g) Faulty weather protection, which shall include, but not be limited to, the following:

(1) Deteriorated, crumbling, or loose plaster.

(2) Deteriorated or ineffective waterproofing of exterior walls, roofs, foundations, or floors, including broken windows or doors.

(3) Defective or lack of weather protection for exterior wall coverings, including lack of paint, or weathering due to lack of paint or other approved protective covering.

(4) Broken, rotted, split, or buckled exterior wall coverings or roof coverings.

(j) Those premises on which an accumulation of weeds, vegetation, junk, dead organic matter, debris, garbage, offal, rodent harborages, stagnant water, combustible materials, and similar materials or conditions constitute fire, health, or safety hazards.

(m) All buildings or portions thereof that are not provided with the fire-resistive construction or fire-extinguishing systems or equipment required by this code, except those buildings or portions thereof that conformed with all applicable laws at the time of their

construction and whose fire-resistive integrity and fire-extinguishing systems or equipment have been adequately maintained and improved in relation to any increase in occupant load, alteration or addition, or any change in occupancy.

(n) All buildings or portions thereof occupied for living, sleeping, cooking, or dining purposes that were not designed or intended to be used for those occupancies.

(o) Inadequate structural resistance to horizontal forces.

"Substandard building" includes a building not in compliance with Section 13143.2.

39.     It is implied in the contract that this performance will be done competently and with reasonable care. (CACI 328)

40.     Defendant breached the implied warranty of habitability by allowing all of the conditions above to exist for an unreasonable amount of time after notice from Plaintiff.

41.     Per CACI 328 – Plaintiff have satisfied each of the necessary conditions to prove their claim.

1. Plaintiff and Defendants entered into a contract; a Lease Agreement.

2. Plaintiff did all that the contract required of her by making all of her rent payments and not being in breach in any other fashion that was not waived or excused.

3. Defendants were required by law to provide possession of the Premises to Plaintiff and that the quiet enjoyment and possession of the Premises would not be interrupted by failing to provide a habitable premise, or one that would cause Plaintiff to quit involuntarily or by no fault of their own.

4. Defendants failed to provide a legally permitted or habitable premises as required by law.

5. Plaintiff was harmed, in that; Plaintiff has paid Security and Rent to Defendants who had no legal right to accept rent due to the ongoing conditions at the Property inside and in the common areas.  (Landlords are not permitted to collect rent for a property which they have failed to maintain on a substantial level [CA Civil Code Sec. 1942.4]).

6. Defendants' breach of contract was the substantial factor in causing Plaintiff's harm.

42.     From before the inception of the Lease, the Property was unfit for human

occupation in that it substantially failed to comply with those applicable civil code, building code, and housing code standards that materially affected Plaintiff's welfare, health and safety as well as Plaintiff' ability to quietly enjoy the Property, as promised contractually by Defendants.

43.     From inception of Plaintiff's tenancy, the Premises has been was unfit for human occupation due to at least one of the material violations of Cal. Civil Code § 1941.1 and Cal Health & Safety Code § 17920.3.  These violations included by way of illustration but not limitation: untreated sewage backup, cockroach infestations, vermin infestations, no central heating, lack of weatherproofing, rubbish and trash through the common areas, and more.

44.     Defendants were notified in writing expressly of each of the violations, and yet the violations continued to exist and remained uncured or were never properly remediated or repaired, so as to be tantamount to having never made the repair or at all.

45.     Each ongoing violation during Plaintiff's tenancy was indicative of Defendants' refusals to perform or failures to properly perform remediation of issues under the contract and as such substantially failed to comply with those applicable civil codes, building and safety codes, case law, and housing code standards that materially affected Plaintiff's welfare, health and safety, and their ability to quietly enjoy the Property, which they were promised contractually by Defendants and implied by law.

46.     Each of Defendants' breaches as to Plaintiff's Lease were substantial in that each was sufficient to render the unit legally uninhabitable, after having been given notice of the issues and failing to cure them.

47.     Plaintiff fully performed under the Lease Agreement.

48.     As a direct and proximate result of Defendants' breaches, Plaintiff suffered extensive financial damages, as well as damage to her health and well-being, in an amount to be proven at trial, but when taken individually or with the other causes of action herein, are in excess of $25,000.

### THIRD CAUSE OF ACTION: BREACH OF IMPLIED
### WARRANTY OF QUIET ENJOYMENT
### (Cal. Civ. Code § 1927)

(By Plaintiff against Defendants and Each of them)

49.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 48 as though set forth fully herein.

50.     By and through their acts and omissions, Defendants did on one or more occasions breach their obligations under Plaintiff's Lease Agreement, the laws and codes of the State of California, the implied warranties of habitability and quiet enjoyment, and well settled case law of the State of California. (See CCC § 1927 - An agreement to let upon hire binds the letter to secure to the hirer the quiet possession of the thing hired during the term of the hiring, against all persons lawfully claiming the same.")

51.     The parties' contract requires that Defendant have provided the Premises in a legal and habitable condition as established by the codes of the State of California and common law. Defendants owed a duty to Plaintiff to provide her with a habitable premise pursuant to the well-settled case law in Green v. Superior Court, ( 1974) 10 Cal.3d 616, 637-638 [111 Cal.Rptr. 704, 718-719]; Hinson v. Delis, (1972) 26 Cal.App.3d 62, 70 [102 Cal.Rptr. 661, 666] and codified under Cal.Civ.Code. § 1941.1 et seq. and Health Safety Code § 17920.3. The codes which apply here, state:

**Cal.Civ.Code. § 1941.1:**

(a)     A dwelling shall be deemed untenantable for purposes of CCC § 1941.1 et seq if it substantially lacks any of the following affirmative standard characteristics or is a residential unit described in Section 17920.3 or 17920.10 of the Health and Safety Code:

(1)   Effective waterproofing and weather protection of roof and exterior walls, including unbroken windows and doors. Plumbing or gas facilities that conformed to applicable law in effect at the time of installation, maintained in good working order.

(2) Plumbing or gas facilities that conformed to applicable law in effect at the time of installation, maintained in good working order.

(4) Heating facilities that conformed with applicable law at the time of installation, maintained in good working order.

(5) Electrical lighting, with wiring and electrical equipment that conformed with

applicable law at the time of installation, maintained in good working order.

(6) Building, grounds, and appurtenances at the time of the commencement of the lease or rental agreement, and all areas under control of the landlord, kept in every part clean, sanitary, and free from all accumulations of debris, filth, rubbish, garbage, rodents, and vermin.

(7) An adequate number of appropriate receptacles for garbage and rubbish, in clean condition and good repair at the time of the commencement of the lease or rental agreement, with the landlord providing appropriate serviceable receptacles thereafter and being responsible for the clean condition and good repair of the receptacles under his or her control.

(8) Floors, stairways, and railings maintained in good repair.

**Health and Safety Code § 17920.3:**

Any building or portion thereof including any dwelling unit, guestroom or suite of rooms, or the premises on which the same is located, in which there exists any of the following listed conditions to an extent that endangers the life, limb, health, property, safety, or welfare of the public or the occupants thereof shall be deemed and hereby is declared to be a substandard building:

(b) Inadequate sanitation shall include, but not be limited to, the following:

(2) Lack of, or improper water closet, lavatory, or bathtub or shower in a dwelling unit.

(3) Lack of, or improper kitchen sink.

(5) Lack of hot and cold running water to plumbing fixtures in a dwelling unit.

(6) Lack of adequate heating.

(7) Lack of, or improper operation of required ventilating equipment.

(8) Lack of minimum amounts of natural light and ventilation required by this code.

(11) Dampness of habitable rooms.

(14) General dilapidation or improper maintenance.

(b) Structural hazards shall include, but not be limited to, the following:

(1) Deteriorated or inadequate foundations.

(2) Defective or deteriorated flooring or floor supports.

(3) Flooring or floor supports of insufficient size to carry imposed loads with safety.

(4) Members of walls, partitions, or other vertical supports that split, lean, list, or buckle due to defective material or deterioration.

(5) Members of walls, partitions, or other vertical supports that are of insufficient size to carry imposed loads with safety.

(6) Members of ceilings, roofs, ceiling and roof supports, or other horizontal members which sag, split, or buckle due to defective material or deterioration.

(7) Members of ceilings, roofs, ceiling and roof supports, or other horizontal members that are of insufficient size to carry imposed loads with safety

(c) Any nuisance.

(d) All wiring, except that which conformed with all applicable laws in effect at the time of installation if it is currently in good and safe condition and working properly.

(e) All plumbing, except plumbing that conformed with all applicable laws in effect at the time of installation and has been maintained in good condition, or that may not have conformed with all applicable laws in effect at the time of installation but is currently in good and safe condition and working properly, and that is free of cross connections and siphonage between fixtures.

(f) All mechanical equipment, including vents, except equipment that conformed with all applicable laws in effect at the time of installation and that has been maintained in good and safe condition, or that may not have conformed with all applicable laws in effect at the time of installation but is currently in good and safe condition and working properly.

(g) Faulty weather protection, which shall include, but not be limited to, the following:

(1) Deteriorated, crumbling, or loose plaster.

(2) Deteriorated or ineffective waterproofing of exterior walls, roofs, foundations, or floors, including broken windows or doors.

(3) Defective or lack of weather protection for exterior wall coverings, including lack of paint, or weathering due to lack of paint or other approved protective covering.

(4) Broken, rotted, split, or buckled exterior wall coverings or roof coverings.

(j) Those premises on which an accumulation of weeds, vegetation, junk, dead organic matter, debris, garbage, offal, rodent harborages, stagnant water, combustible materials, and similar materials or conditions constitute fire, health, or safety hazards.

(m) All buildings or portions thereof that are not provided with the fire-resistive construction or fire-extinguishing systems or equipment required by this code, except those buildings or portions thereof that conformed with all applicable laws at the time of their construction and whose fire-resistive integrity and fire-extinguishing systems or equipment have been adequately maintained and improved in relation to any increase in occupant load, alteration or addition, or any change in occupancy.

(n) All buildings or portions thereof occupied for living, sleeping, cooking, or dining purposes that were not designed or intended to be used for those occupancies.

(o) Inadequate structural resistance to horizontal forces.

"Substandard building" includes a building not in compliance with Section 13143.2.

52.     It is implied in the contract that this performance will be done competently and with reasonable care. (CACI 328)

53.     Defendant breached the implied warranty of habitability by allowing all of the conditions above to exist for an unreasonable amount of time after notice from Plaintiff.

54.     Per CACI 328 – Plaintiff have satisfied each of the necessary conditions to prove their claim.

1. Plaintiff and Defendants entered into a contract; a Lease Agreement.

2. Plaintiff did all that the contract required of her by making all of her rent payments and not being in breach in any other fashion that was not waived or excused.

3. Defendants, were required by law to provide possession of the Premises to Plaintiff and that the quiet enjoyment and possession of the Premises would not be interrupted by failing to provide a habitable premise, or one that would cause Plaintiff to quit involuntarily or by no fault of their own.

4. Defendants failed to provide a legally permitted or habitable premises as required by

law.

5. Plaintiff was harmed, in that; Plaintiff has paid Security and Rent to Defendant who had no legal right to accept rent due to the ongoing conditions at the Property inside and in the common areas.  (Landlords are not permitted to collect rent for a property which they have failed to maintain on a substantial level [CA Civil Code Sec. 1942.4]).

6. Defendants' breach of contract was the substantial factor in causing Plaintiff's harm.

55.     From before the inception of the Lease, the Property was unfit for human occupation in that it substantially failed to comply with those applicable civil code, building code, and housing code standards that materially affected Plaintiff' welfare, health and safety as well as Plaintiff's ability to quietly enjoy the Property, as promised contractually by Defendants.

56.     From inception of Plaintiff's tenancy, the Property was unfit for human occupation due to at least one of the material violations of Cal. Civil Code § 1941.1 and Cal Health & Safety Code § 17920.3.  These violations included by way of illustration but not limitation: untreated sewage backup, cockroach infestations, vermin infestations, no central heating, lack of weatherproofing, rubbish and trash through the common areas, and more.

57.     Defendants were notified in writing expressly of each of the violations, and yet the violations continued to exist and remained uncured or were never properly remediated or repaired, so as to be tantamount to having never made the repair or at all.

58.     Each ongoing violation during Plaintiff's tenancy was indicative of Defendants' refusals to perform or failures to properly perform remediation of issues under the contract and as such substantially failed to comply with those applicable civil codes, building and safety codes, case law, and housing code standards that materially affected Plaintiff's welfare, health and safety, and their ability to quietly enjoy the Property, which they were promised contractually by Defendants and implied by law.

59.     Each of Defendants' breaches as to Plaintiff's Lease were substantial in that each was sufficient to render the unit legally uninhabitable, after having been given notice of the issues and failing to cure them.

60.     Plaintiff fully performed under the Lease Agreement.

61.     As a direct and proximate result of Defendants' breaches, Plaintiff suffered extensive financial damages, as well as damage to their health and well-being, in an amount to be proven at trial, but when taken individually or with the other causes of action herein, are in excess of $25,000.

**FOURTH CAUSE OF ACTION: NEGLIGENCE**

(By Plaintiff against Defendants and Each of them)

62.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1-61 as though set forth fully herein.

63.     Defendants, by and through the Lease with Plaintiff, and the duties imposed on them by law, owed a duty as the landlord or owner of the Property to act with the ordinary care, caution, skill and prudence of a landlord or owner in like circumstances. (See CCC § 1714(a) and CACI 401 and 408)

64.     Defendant failed to provide a habitable premises per CCC § 1941.1 et seq, and Cal. Health and Safety Code § 17920.3 despite notice from Plaintiff.

65.     As a result of the landlord-tenant relationship created between Plaintiff and Defendants, Defendants owed a duty of care to Plaintiff.  Defendants owed a duty to use the same ordinary skill, care and prudence as a similarly situated landlord or owner to investigate and cure within a reasonable time, any issues which would diminish or interfere with the habitability of each unit.

66.     "In a case not involving unlawful detainer and the failure to pay rent, the California Supreme Court has stated that the warranty of habitability extends only to conditions of which the landlord knew or should have discovered through reasonable inspections. (See Peterson v. Superior Court (1995) 10 Cal.4th 1185, 1206 [43 Cal.Rptr.2d 836, 899 P.2d 905]. [T]he fact that a tenant was or was not aware of specific defects is not determinative of the duty of a landlord to maintain premises which are habitable. The same reasons which imply the existence of the warranty of habitability – the inequality of bargaining power, the shortage of housing, and the impracticability of imposing upon tenants a duty of inspection - also compel the conclusion that a tenant's lack of knowledge of defects is not a prerequisite to the landlord's breach of the warranty." (Knight v.

<u>Hallsthammar</u>, (1981) 29 Cal.3d 46 at 54)

67.     Defendants breached the duties owed to Plaintiff by failing to exercise reasonable care, skill, prudence and diligence in performing their obligations under the leases and the laws of California of a reasonably prudent landlord or owner in similar circumstances by way of regular inspections and proper remedial action after notice of issues.

68.     Defendants breached their duties, by way of illustration, but not by way of limitation, in that they failed to respond to complaints, investigate, and properly cure issues, or to do so timely or even at all, despite multiple complaints by Plaintiff, all in violation of the case law and codes set forth above.  Such failures were a substantial factor in the harm to Plaintiff.

69.     Even further, Defendants and each of them negligently and carelessly failed to supervise their agents who ignored, refused, and failed to repair issues, and created hazardous conditions and nuisances.

70.     Defendants are responsible for the repairing, replacing, and maintaining common areas.

71.     In failing to act to enforce the contract, the law or the CC&Rs, Defendant further breached their duties of ordinary care, caution, skill and prudence of a landlord or owner under like circumstances.

72.     As a direct and proximate result of Defendants' breaches of their duties to Plaintiff, Plaintiff was harmed in an amount to be proven at trial, but when taken individually or with the other causes of action herein, are in excess of $25,000.

## FIFTH CAUSE OF ACTION: BREACH OF COVENANT
## OF GOOD FAITH AND FAIR DEALING

(By Plaintiff against Defendants and Each of them)

73.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs  1- 72 as though set forth fully herein.

74.     Plaintiff made all of the rental payments and fully performed all of the contractual obligations under the Lease agreement except those which were waived, excused, performed or discharged.

75.     Defendants, by and through their acts and omissions as described herein this complaint, unfairly interfered with and prevented Plaintiff's rights to receive the benefits of the contract, in that by and through the breaches of habitability and quiet enjoyment, as well as their neglect, which includes their lack of any good faith effort to cure the deficiencies to the Premises, and their failure to take action to enforce the CC&R's to ensure that the cockroach and vermin infestations were treated, sewage backups were properly cleaned up and proper functioning heating was provided on the Premises, caused the value of the Property to be zero and resulted in damages each time Plaintiff paid rent.

76.     All of the acts, omissions, and intentional failures directly and proximately caused Plaintiff damages in an amount to be proven at trial but, when taken by themselves or with the other damages alleged herein, total an amount to be proven at trial, but in excess of $25,000.

## SIXTH CAUSE OF ACTION: PRIVATE NUISANCE

### (By Plaintiff against Defendants and Each of them)

77.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 76 as though set forth fully herein.

78.     In doing the things hereinabove alleged, Defendants created conditions that: 1) were harmful to the health of Plaintiff and their guests of the Premises; 2) that were indecent and offensive to the senses of Plaintiff and their guests of the Premises; and 3) were an obstruction to the free use of property so as to interfere with the comfortable enjoyment of the Property. Specifically, the untenable living conditions of the Premises constituted a public health hazard to Plaintiff and their guests of the Premises. (See CACI 2021)

79.     Defendants' conduct in acting as described above was intentional and unreasonable.

80.     The conditions created by Defendants' conduct substantially interfered with Plaintiff's use and enjoyment of the Premises.

81.     An ordinary person would reasonably be annoyed and disturbed by Defendants' conduct.

82.     Plaintiff did not consent to Defendants' conduct.

83.     Defendants' conduct was a substantial factor in causing Plaintiff's harm.

84.     The seriousness of the harm to Plaintiff outweighs the public benefit (if any) of Defendants' conduct.

85.     As a direct and proximate result of the private nuisance created by Defendants, Plaintiff has been harmed in an amount to be proven at trial, but when taken together with the other damages described herein, are in excess of $25,000.

## SEVENTH CAUSE OF ACTION:

## VIOLATION OF AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101, et seq.)

(By Plaintiff against Defendants and Each of them)

86.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 85 as though set forth fully herein.

87.     Under the ADA, it is an act of discrimination to fail to ensure that the privileges, advantages, accommodations, facilities, goods and services of any place of public accommodation is offered on a full and equal basis by anyone who owns, leases, or operates a place of public accommodation. See 42 U.S.C. § 12182(a).

88.     Discrimination is defined, inter alia, as follows:

a.      A failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the accommodation would work a fundamental alteration of those services and facilities. 42 U.S.C. §12182(b)(2)(A)(ii).

b.      A failure to remove architectural barriers where such removal is readily achievable. 42 U.S.C. §12182(b)(2)(A)(iv). Barriers are defined by reference to the ADA Standards.

c.      A failure to make alterations in such a manner that, to the maximum extent feasible, the altered portions of the facility are readily accessible to and

usable by individuals with disabilities, including individuals who use wheelchairs or to ensure that, to the maximum extent feasible, the path of travel to the altered area and the bathrooms, telephones, and drinking fountains serving the altered area, are readily accessible to and usable by individuals with disabilities. 42 U.S.C. § 12183(a)(2).

89.     Here, the Defendants created barriers to Plaintiff's use and enjoyment of common area facilities despite the fact that Plaintiff was required to pay and did pay monthly rent. Defendants actively discriminated against Plaintiff due to Plaintiffs disabilities and has deprived her of access which is particularly cruel given the prolonged and steadily exacerbated circumstances.

89.     As a proximate result of said unlawful practices of Defendants, as herein alleged, Plaintiff suffered actual damages, in an amount to be proven at trial.

90.     As a further and direct result of the unlawful practices of Defendants, as herein alleged, Plaintiffs suffered emotional injuries, inter alia, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and injury, and deprivation of property rights, in amounts to be proven at the time of trial.

91.     Defendants' conduct was a substantial factor in causing Plaintiff's harm.

92.     The seriousness of the harm to Plaintiff outweighs the public benefit (if any) of Defendants' conduct.

93.     As a direct and proximate result of the private nuisance created by Defendants, Plaintiff has been harmed in an amount to be proven at trial, but when taken together with the other damages described herein, are in excess of $25,000.

**EIGHTH CAUSE OF ACTION: FEDERAL HOUSING DISCRIMINATION (42 U.S.C. § 1981, et seq.)**

(By Plaintiff against Defendants and Each of them)

94.     Plaintiff hereby alleges and incorporates by reference each and every allegation

stated in the preceding paragraphs 1 – 93 as though set forth fully herein.

95.     The acts described herein constituted discrimination pursuant to 42 U.S.C. section 1981 on the grounds of disability.  The Defendants would even say to Plaintiff that this building is not safe for her.

96.     As a proximate result of said unlawful practices of Defendants, as herein alleged, Plaintiffs, both of whom are disabled, suffered actual damages, in an amount to be proven at trial.

97.     As a further and direct result of the unlawful practices of Defendants, as herein alleged, Plaintiffs suffered emotional injuries, inter alia, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, anxiety, frustration and injury, and deprivation of property rights, in amounts to be proven at the time of trial.

## NINTH CAUSE OF ACTION: VIOLATION OF THE UNRUH CIVIL RIGHTS ACT
### (California Civil Code §§ 51-53)

(By Plaintiff against Defendants and Each of them)

98.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 97 as though set forth fully herein.

99.     The Unruh Civil Rights Act ("Unruh Act") guarantees, inter alia, that persons with disabilities are entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishment of every kind whatsoever within the jurisdiction of the State of California. Cal. Civ. Code§ 51(b).

100.    The Unruh Act provides that a violation of the ADA is a violation of the Unruh Act. Cal. Civ. Code § 51(f).

101.    Defendants' acts and omissions, as herein alleged, have violated the Unruh Act by, inter alia, denying, or aiding, or inciting the denial of Plaintiffs' rights to full and equal use of the accommodations, advantages, facilities, privileges, or services offered.

102.    Because the violation of the Unruh Civil Rights Act resulted in difficulty, discomfort or embarrassment for Plaintiffs, the Defendants are also each responsible for statutory

damages, i.e., a civil penalty. (Civ. Code§ 55.56(a) - (c).)

## TENTH CAUSE OF ACTION: ELDER ABUSE IN VIOLATION OF CAL. WEL. & INST. CODE §15600, et seq.

### (By Plaintiff against Defendants and Each of them)

103.    Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 102 as though set forth fully herein.

104.    In 1991 the California Legislature enacted the Elder Abuse Act, codified at California Welfare & Institutions Code §15600 et seq. In enacting the Elder Abuse Act, the Legislature expressly recognized that elders (defined as persons above the age of 65) are victims of financial fraud and abuse, among other forms of neglect and harm, and intended to provide enhanced civil remedies to redress the reckless acts and/or omissions within the Act's ambit that are perpetrated against our elders.

105.    As alleged above, Defendants committed acts and omissions as that term is used in Welfare & Institutions Code §15610.30 by doing those things described herein, at which time Plaintiff Anahit was over the age of 65 and therefore an "elder" within the meaning of the California Elder Abuse Law. (California Welfare & Institutions Code §15610.27).

106.    Defendants, and each of them, played a material function in committing the breaches and violations described herein and thereby legally and proximately caused damages. By engaging in the acts alleged above, Defendants committed directly and aided and abetted abuse of an elder. The conduct described herein, was reckless, oppressive, fraudulent, and malicious within the meaning of California Welfare & Institutions Code §15657 et seq. Under California Civil Code §3294 and California Welfare & Institutions Code §15657.5, Cross-Defendant George is liable for compensatory, all other remedies otherwise provided for law, attorneys fees and costs, as well as punitive damages.

///

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**ELEVENTH CAUSE OF ACTION: LOS ANGELES RENT STABILIZATION**

**ORDINANCE VIOLATIONS OF LOS ANGELES MUNICIPAL CODE ORDINANCE**

**151.00 & 151.09 ET SEQ.**

(By Plaintiff against Defendants and Each of them)

107.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs 1 – 106, as though set forth fully herein.

108.     As a tenant of residential property located in Los Angeles, California and subject to Los Angeles City Ordinance 151.00 et seq. (the "Rent Stabilization Ordinance"), Plaintiff is entitled to bring an action against all Defendants who have violated said Rent Stabilization Ordinance to Plaintiff's detriment.

109.     The City of Los Angeles' Rent Stabilization Ordinance provides safeguards for tenants in Los Angeles. When a landlord wrongfully seeks recovery of their residential rental property without just cause and/or in retaliation against their tenant, their tenant is entitled do just compensation including without limitation damages.

110.     The Rent Stabilization Ordinance also prohibits landlords from changing tenancy terms to prohibit pets per Section 151.09(D).

111.     At all times relevant herein, the Subject Premises was subject to the Rent Stabilization Ordinance.

112.     When Plaintiff's tenancy began, Defendants failed to notify Plaintiff about the existence and scope of the Rent Stabilization Ordinance and failed to follow any of the requisite procedures when attempting to recover possession.

113.     Defendants failed and refused to make repairs at the Subject Premises, which constitutes a decrease in housing services, and also relentlessly harassed Plaintiff in an attempt to cause Plaintiff to relinquish possession of the Subject Premises. Plaintiff is informed, believes, and

alleges, the decrease in housing services constitutes a rent increase under the Rent Stabilization Ordinance.

114.    Plaintiff suffered injuries and damages because of Defendants' violations.

115.    Plaintiff suffered actual damages, including emotional distress, discomfort and annoyance, overpayment of rent, out-of-pocket expenses, and other injuries and damages. Plaintiff is also seeking special damages of up to $10,000 per violation plus $5,000 for each violation of Section 1942.4 currently totaling not less than $50,000 but potentially at a per diem rate for refusal to cure defects such as a functioning toilet entitling Plaintiff to damages in excess of $500,000.

116.    Additionally, Plaintiff is entitled to annoyance and frustration damages totaling $100,000 or greater, emotional distress damages in excess of $100,000 as well as special damages of $50,000 and general pain and suffering damages of $100,000 or more. Plaintiff is entitled to costs and attorney fees according to proof. Plaintiff is entitled to tax offset damages, statutory damages, rent offset damages, and any other relief the court deems reasonable plus interest from the date of the judgment at 10% per annum.

117.    Plaintiff is known to Defendants to have a disability thus qualifying him for treble damages by code.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a jury trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against each Defendant as follows:

1.    For actual damages;

2.    For statutory damages;

3.    For special damages in amount to be proven at trial;

4.    For general damages in an amount to be proven at trial;

5.    For economic loss in an amount to be proven at trial;

6.    For punitive damages (per statute CCC § 1942.5, 1788 et seq)

7.    For treble damages (per statute CCC §3345)

8.      For pre- and post-judgment interest;

9.      Reasonable statutory attorney fees, litigation expenses and costs of suit pursuant to, among other statutes, 42 U.S.C. § 12205; and Cal. Civ. Code§§ 52; and

10.     For injunctive relief, compelling Defendants to comply with the Americans with Disabilities Act and the Unruh Civil Rights Act.

11.     Damages under the Unruh Civil Rights Act, which provides for actual damages and a statutory minimum of $4,000 for each offense.  In  the instant case, through the date of the filing of this lawsuit, Plaintiff contends actual damages of no less than $500,000, and contend minimum daily accruing statutory damages of $4,000.

12.     For such other and further relief as the Court deems just and proper.

DATED:   January 27, 2023                THE LAW OFFICE OF WHITNEY D. ACKERMAN

By:*/S/ Whitney D. Ackerman*
Whitney D. Ackerman, Esq.
Attorney for Plaintiff

**COMPLAINT**